delaying approval of additional controllers for a period of three months. After considering this issue in further detail and with the assistance of live and deposition testimony, I think that the Government has now proved that the discretionary function exception allies here. The usual context of "discretion" in these cases is the decision by the executive where to spend the time and money, the resources, of the country. Whether and when a tower ought to be staffed by one or two controllers are classic exercises of executive discretion. But more importantly, the FAA's actions did nothing to prevent Midwest from complying with any FAA orders.

Having decided the matter in favor of the Government, I direct it to prepare Findings of Fact (which may be reviewed by plaintiffs and objected to if inconsistent with or unnecessary to my ruling here). To those findings the Government shall add the following Conclusions of Law:

- The Court has jurisdiction over the parties to the case.
- The United States committed no tort against the plaintiffs under FTCA, 28 U.S.C. § 1346(b)(1).
- The United States has a valid defense that its alleged negligent oversight falls within the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a).
- The United States is entitled to judgment in this matter.

ENTER:

James B. Zagel
United States District Judge

DATE: 27 Jan 2004

4

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 1738 | **DATE** | 1/27/2004 |
| **CASE TITLE** | WALKER vs. UNITED STATES | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due ___ ___.

(3) ☐ Answer brief to motion due___ ___. Reply to answer brief due___ ___.

(4) ☐ Ruling/Hearing on ___ ___ set for ___ ___ at ___ ___.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ___ ___ set for ___ ___ at ___ ___.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ___ ___ set for ___ ___ at ___ ___.

(7) ☐ Trial[set for/re-set for] on ___ ___ at ___ ___.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ___ ___ at ___ ___.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  **Enter court judgment in favor of defendant and against plaintiff.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 94 |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| DW | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


JAN 2 3 2004

| | |
|---|---|
| DIANE L. ALINSKY, DURENDA WALKER, JOHN J. CANTY and NEVIE B. CANTY, PATRICIA VAN PELT WATKINS, JERRY PHILLIPS, CARLA VERTZ, RICHARD POLKA,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendants. | No. 98 C 6189<br>No. 99 C 1738<br>No. 99 C 2447<br>No. 99 C 2883<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

There are no material undisputed facts in this case, but there are serious disagreements over the meaning of the known facts.[1] For purposes of this opinion, I assume that the air traffic controller's conduct on July 19, 1997 was a proximate cause of the disaster that led to the loss of seven lives. I also assume that the disaster would have been avoided had there been just one

---

[1] The principal disputed fact is whether the examination given to the FAA controller whose job it was to open the air control tower at Meigs constituted a "practical test" under Federal Aviation Regulation 65.37. If a "practical test" means putting the controller in front of a screen and grading her performance as a controller, this was not done. If the phrase means administering a formal test with questions followed by graded answers, this too was not done. Nonetheless, I am satisfied that the regulation does not require a particular form of examination, and the controller's performance in the process of preparing for the job reasonably constitutes the practical examination called for in the operating procedures. Although the controller in question has no clear memory of what was done, the person who examined her testified, credibly, that she and the controller spent several hours over a period of days going over the equipment and the routines at Meigs. The examiner took the approach she did because the controller she was examining was known to her to be experienced, highly competent, and familiar with the air traffic issues in this area and because an actual test of performance as a controller at Meigs was impossible before Meigs was opened. In any event, there is no claim that the failure to give the practical examination itself had any causal relationship to the wrongful deaths which occurred several weeks later with a different controller in the tower.

more controller working Meigs on that shift – either because there was so much traffic at the time in question that a single controller could not properly control it or because the strain of working alone fatigued the controller and impaired her judgment.[2]

After pre-trial rulings, the only remaining issue is the alleged failure of the FAA to timely approve the request of its independent contractor – Midwest Air Traffic Control Services, Inc. ("Midwest") – for an additional controller. Under the contract, Midwest could put as many controllers as it wished at Meigs but the FAA would only pay for the services of those it approved. Midwest had petitioned the FAA to allow it to hire an additional controller because it believed the traffic justified one. The regional FAA thought Midwest was right and sent the request to Washington, which did approve it. The approval took a few weeks to obtain. Had it been approved earlier there would, I *assume*, have been an extra controller and the disaster, I *assume*, would not have occurred.

The Government offers two defenses – a merit-based and an immunity-based one – both of which I accept. On the merits, I find that the Government took a reasonable amount of time to decide whether to pay for an extra controller. The request was not forwarded to Washington as one that required urgent action. Midwest's person in charge did not think it was an emergency. Moreover, the FAA was entitled to believe that if safety were an issue, Midwest would add another controller at its own expense which it was free to do. Midwest's own bid for the contract said specifically that, if necessary, it would add a controller at no increase in the contract price,

---

[2] The Government is willing to live with these assumptions solely to determine whether it could be found liable even if they were true. If the case went to trial, the Government would dispute these assumptions, particularly since it regards the workload of the controller at Meigs on the shift in question to have been light.

2

and it stated that it had a fast response team of experienced controllers who could quickly be added as an effective controller resource. Finally, some days before the disaster occurred, Midwest was advised that it had been "given a verbal OK by Contracts at [FAA] Headquarters to hire another full-time controller at Meigs," at least until the end of the month in which the disaster occurred. Absent a contention that Midwest was prohibited from using contract controllers without direct FAA supervision of the controllers' performance, the FAA was reasonable in its dealing with Midwest.

The second FAA defense is that its alleged negligent oversight falls within the discretionary function exception to the Federal Tort Claims Act ("FTCA"). An exception to the waiver of immunity contained in the FTCA is that no liability shall lie for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved the abused." 28 U.S.C. § 2680(a). Whether the discretionary function exception applies depends upon two factors: (1) whether government employees violated a specific mandatory statute, regulation, or policy, and (2) whether the conduct involved was the type of conduct that Congress intended to shield from liability. *See Berkovitz by Berkovitz v. United States*, 486 U.S. 531 (1988); *Calderone v. United States*, 123 F.3d 947, 949 (7th Cir. 1997).

Addressing this issue at the summary judgment stage, I found the Government had not proved the discretionary function exception applies here, which it bears the burden of proving. *See GATX/Airlog Co. v. United States*, 234 F.3d 1089 (9th Cir. 2000). I found that the FAA had effectively prevented Midwest from coming into conformity with FAA Order 7210.3's requirement for "supervision of each watch regardless of the number of persons assigned" by

3